Good morning, Counsel. Is it still morning? Yeah. That doesn't bode well. May it please the Court, Counsel, Kara Porter and John D. Lawrenson for the defendants, appellants in this case, and particularly the individuals Jonathan and Sandra Hanley. What I would like to do is just briefly address the status of the personal jurisdiction argument that was raised in the briefing and then address, I think, the two main pure questions of law. With respect to the personal jurisdiction issue, as the Court knows from the briefs, the District Court, in our view, did not rule on personal jurisdiction despite our urging that that was a requirement. It doesn't really matter, though, right, because isn't it a thing we would have to figure out on our own and we could just answer the question ourselves? Well, I would love it if you guys would actually address the merits of our personal jurisdiction argument. I think that would be terrific. I think that's the position that I know that in the brief I wanted to at the time there had been no ruling by the District Court. I mean, are there any facts in dispute or is it just a legal question? I don't think there are. I think the evidence that was presented is undisputed. So, actually, that would resolve a tricky procedural issue of what happens when a District Court issues sort of a related ruling later after the briefing is done in this case because the District Court did issue a ruling denying the motion to dismiss. I believe the FTC sent that as supplemental authority. But that's weird. That's kind of like what if a judge, you know, six months later had issued a ruling on irreparable harm and, you know, Well, if we think the judge had jurisdiction, then does any of this matter whether the judge ruled or didn't? As long as there really was jurisdiction, I guess you want to argue there wasn't. But if we're not convinced by that, does it matter whether there was a ruling or not? Well, I do believe that the procedure matters. I think the court, the District Court, should address all of the elements of a motion. Obviously, it's less urgent now because we know what the court would do if you remanded. And I do believe that it's just an issue of law, an application to undisputed facts, and would welcome that. But I, you know, we're partly doing this as preservation. But don't our cases say that if a district court rules on a preliminary injunction, there is an implication that the court has determined that it has jurisdiction? You know, there are cases that say that. But in this case, the judge specifically said, specifically stated a different standard. And that was the problem that we had. But as a matter of law, our cases have said, appear to say that if the court rules that it has to, that if the court rules on a preliminary injunction, there is an implication that the court has determined it has jurisdiction. So why don't we just go with that and then proceed with the merits of the case? Well, and I will say that I don't know that that rule about the implication applies when you have an express statement by the court. To the contrary, you know. But, you know, in other words, it's not a point. So on the test for jurisdiction, isn't the test whether you have minimum contacts with the United States in general? Well, we have, as the Court knows, we have engaged in a very lengthy analysis of why we believe that law no longer applies. And when we've set forth our arguments on that, we do concede that until either the Supreme Court or perhaps the Ninth Circuit and Bank rules that there is adverse precedent to us on that point. But for our purposes here, we have to use that test, minimum contacts with the United States, which you clearly have. So it seems like maybe this is a lot of time spent on something that's just clearly resolved already here. You know, I would rather talk about the other two legal issues. However, I do believe the procedure matters and that a court should not be able to just rule on a few of the elements and then later rule on those other elements. Well, Counsel, unfortunately you only have a finite period of time. Yes. And so your time might be better spent on the arguments that you might have a little better chance of convincing us. That sounds great. I would like to start with, I mean, there's two main legal issues. One is the De Beers issue. The other is the second proviso issue, just for shorthand purposes. The De Beers issue is actually of first impression in this circuit. The FTC argued below and the district court believed that this court had addressed it in the H.N. Singer case, but it was a completely different issue raised in that case. What we have here are two different types of assets that have been frozen. And actually, I can refer you to page 51 of the FTC's brief where they actually point out the two different types of assets. There are ill-gotten assets. You know, the revenue that you received or things you, your boat, if you had one, that you bought, you know, those kinds of things. We're not challenging that those can be seized pursuant to the equitable authority. Those aren't at issue. That's all that was at issue in H.N. Singer. What we're saying is that literally when Mrs. Hanley's grandma's ring that predates any alleged misconduct is just one example of assets that were frozen and then retained by the FTC, that's a different standard. That's never been addressed, and I think it's because De Beers makes it quite clear. There is no real argument that the relief in this case would be to disgorge grandma's ring. Now, once there was some sort of a disgorgement judgment and then they were trying to collect it, then you can try to go get assets, but what happened here was they literally took grandma's ring and other assets that predated the alleged misconduct, and what we're saying is under De Beers, that is not, you can't order them to disgorge assets that were unrelated, not purchased, for example, with the ill-gotten gains. You have to wait until you have a judgment. Remind me, what were the other assets that you're complaining about here rather than grandma's ring? The E-Trade account, and that was funded primarily by the sale of a house which was purchased prior to the alleged illegal conduct. I don't believe there was much of a factual dispute below about the specific items. Now, I will admit I think that since then, I believe the receiver has now taken control or asserted a right to the Porsche, and I believe that was on our list. I thought the problem here for your argument was that your clients had in fact commingled ill-gotten gains with other maybe assets that fall into the category you're talking about, and that's what rendered them subject to this freeze. Well, and the reason that that's not the case is because, first of all, anything that is subject to disgorgement is part of the receivership estate, and the receiver then makes the examination, as they have done in this case, for example, taking artwork that they believe was purchased, et cetera, but they have not taken that position because there's no factual basis for it with respect to the E-Trade account, Grandma's ring, and the safety deposit boxes. I do believe that in recent events they did make a claim on the Porsche, or at least they've told us that they're going to, but the others are not. Those others are in fact under the control of the FTC, which is confirmed on page 51 of the FTC's brief, and that's because they're not part of the receivership or the disgorgement estate, and that's where the problem lies here. No one has raised in this circuit before this issue about, I'm just calling it Grandma's ring because it is the most obvious example, and I think it's because De Beers has said that. And if I may, just briefly, I would like to... Just to understand your argument about this, is the problem that you claim they froze too large a quantity of assets for the liability, or that they froze assets that weren't subject to being frozen because they weren't commingled? The latter argument is our De Beers argument. Our fourth argument about the scope of the injunction also talks about the judge admittedly not having really any clue, none of us having any clue about the scope. But that one I'm not focusing on given my time. I'm focusing on the only type of relief that can be granted in a preliminary injunction is the type that could be awarded ultimately. In disgorgement, you could not order someone to disgorge something you inherited. Well, why can't you freeze sort of more expansively at first just in case, because you're trying to make sure that the remedies are still available later? I mean... Well, you can if you go through Rule 64. I mean, first of all, you have due process rights in how you do this. In De Beers, the court basically acknowledged, the Supreme Court, that you could go through Rule 64, and if you could meet those elements. Those are the elements for the prejudgment writ of attachment. The problem here is that for reasons that we won't get into but that all FTC lawyers talk about, this case was brought in Nevada. And all of the assets that they're trying to freeze that are not part of the disgorgement are in Utah. And Rule 64 incorporates the state law of the forum state, and in Nevada you cannot go outside the jurisdiction. In fact, I'm not aware of any state where you can go outside the jurisdiction. So that is our primary problem. So if we think that Rule 64 tells us that the federal law applies and not any state law, does this whole issue about what's commingled go away? Yeah, I don't think it's really disputed that Rule 64 incorporates the law of the state. It does not set forth its own criteria for attachment. But doesn't Rule 64 say that a federal statute can govern to the extent it applies over the law of the state? So I thought it could be that the federal law was basically trumping the state law. Well, except that there is nothing claimed in the federal law here that is somehow separate or distinct from the issue of the prejudgment writ of attachment. Remember, we're not complaining about the ability under the federal statute to get a preliminary injunction freezing disgorgeable assets. That is the extent to which the federal statute would come into play here. We're talking solely about assets that are not disgorgeable, that would only be able to be attached after they had a judgment or pursuant to Rule 64. That's the big difference there, I think. And if I may, just because I do want to reserve a couple of minutes if I can, I do want to briefly talk about this Proviso 2 issue. And the ‑‑ I guess I'm just ‑‑ on this Rule 64 or Rule 65, I thought that Fisher told us, or sorry, not Fisher, Singer, that Singer told us that Rule 65 is what applies because the FTC Act gives us prejudgment attachment ability. I'm really still confused about what you're ‑‑ In Singer, the only assets at issue were disgorgeable. So in other words, they were the money that had been obtained due to the alleged misconduct or the boat that was bought with the alleged misconduct. But if it tells us to look to Federal law, how do we still end up in State law? Because Rule 64 is what applies when you're talking about nondisgorgeable assets like Grandma's Ring. And Rule 64, because this is not authorized, it's not disgorgeable under the Federal statute, Rule 64 then turns to State law, which does not allow attachment outside of Utah. Had they brought this claim in Utah, it would be a totally different thing, but they rarely do that. So that's the big difference. Singer, everybody acknowledged those assets were disgorgeable. Here, there's a chunk of them that aren't, and those are the ones that are identified on page 51 of the FTC's brief. It's about 600,000 illiquid assets, mostly the E-Trade account. I do want to at least ‑‑ I would like to reserve two minutes if I can, but I want to just raise this Proviso 2 issue. We encourage ‑‑ maybe there's some confusion here on Proviso 1 or Proviso 2, and I think it's because in some prior cases, the argument has not really been made. And so, for example, you have some cases where this court is not actually identifying which Proviso it is applying. And, for example, we've pointed to some authority where a court is citing to a which leads us to believe it's the case that's citing is also a Proviso 1 case, but we can't tell. We believe that the closest case we have is Evans, which we believe contemplates that in a case like this that is a Proviso 2 case, the court has to show as a factual matter irreparable harm rather than presuming it. The court doesn't have to show it, but find it. Find it. I apologize. It has to find it. And here, as the court said on Excerpt of Record 67, the court said it's presumed in an enforcement action that we just don't believe that's true in a Proviso 2 case. All right. Thank you. Thank you, counsel. Good morning, Your Honors. Good morning. May it please the Court, Imad Abiyat for the Federal Trade Commission. Let me start first with the easy one. What opposing counsel has neglected to mention is that the assets that she was talking about are on page 51 of our brief belong to named defendants. The Hanley's themselves are named in the FTC action, and therefore all of their assets are subject to consumer redress. They have to go towards or can go towards consumer redress. This court only two years ago, in fact, in Commerce Planet, reiterated the rule that there is no tracing requirement under the FTC Act. So as long as the Hanley's themselves are subject to judgment, then the court can freeze their assets, lest there be dissipated, to preserve them for final relief for the consumer. So, counsel, in your view, there doesn't have to be any link between the potential amount of loss and the assets frozen? No, no, no. That's a different question, Your Honor. Sorry. Okay. There are two things. First, what the assets that the Hanley's themselves personally own, as opposed to their corporations, the corporate assets, their own assets are subject to an consumer redress, because the Hanley's... So you're saying it doesn't matter whether grandma's ring was bought with the ill-gotten gains... Correct. ...because the individuals or defendants and everything they have might be at stake? Correct. So that's one. And Commerce Planet, again, from just two years ago, reiterated that there is no tracing requirement. The question that Your Honor... That's a Federal law issue, so we're under Rule 65, not 64. Absolutely. Absolutely. In Etch-a-Singer, this court said that Section 13B can be the basis for an asset freeze. That's what the commission moved for under Section 13B, and that's what the court issued the asset freeze under. So 64 is completely inapplicable. As to the question about the second proviso, this now has been... You didn't answer my question. Oh, I apologize. Yes. So going back to your question, certainly there has to be some connection. If the assets are $100 million and what the commission is alleging is $2 million, it would not be reasonable to freeze all $100 million. Here, it's exactly the opposite. The commission, in its TRO papers and its PI papers, alleged that there were at least $11 million worth of consumer harm that was done. And that number, by the way, now after some discovery has risen to almost $15 million. By comparison, the assets that have been frozen, excuse me, barely come up to between $2 and $3 million. So even if all the assets are used, in fact, consumers are still going to fall short of full redress. So what case do we look to guide us in terms of what finding has to be made by the district court in that connection? Do we just go with whatever allegation the FTC has made, or is there some kind of guidance? What do we look for guidance? Well, let me remind you, Your Honor, that this is a preliminary injunction. I know that. And the district court multiple times in the hearing has reiterated that what it's doing is temporary. And that can be subject to change. But preliminary injunctions have to be accompanied by findings. Absolutely. Correct? So where in the record is the finding that the $2 to $3 million seized was consistent with the amount that amount of projected losses? Where is that in the record? That's not in the record, Your Honor, because that came the amount came out after. So then how could the district court freeze? I mean, you admitted that if they freeze $100 million and there's only $1 million at stake, there's a problem. So what finding was made to tell us that we're not in that situation here? The district court relied on the temporary receiver, the court-appointed receiver's report, preliminary report, which, in fact, valued, gave value to all of the assets that are available. Do we have something where the district court said, I believe that the temporary — sorry, the name of it was the temporary receiver? Yeah. The temporary receiver's numbers are correct? I mean, where's the finding by the district court that tells us that the district court thinks there's more at stake than what was frozen? Your Honor, it's — I don't know that the court has made an express finding in the language that you have stated. What the district court said, the FTC is alleging consumer harm of nearly $11 million . Defendants do not claim that their assets exceed $11 million. Where's that finding in the record? The finding that the district court relied on the assertion of harm by the FTC. I'm just looking for something that links the amount of assets seized to the potential harm or the potential losses or the potential exposure. Yes, Your Honor. I don't think the amount of the assets came out at all in the — So how do we know that the district court accepted what the temporary receiver thought? You said that the district court — Because it was not challenged, Your Honor. They did not challenge that the numbers are incorrect. But I thought they were. I thought they were saying — No, no, no. Their challenge is — their challenge is completely different. Their challenge to the asset freeze relates to what they characterize as unrelated assets. No, no, no. That's one of their arguments. But they also made an argument that these people applying for mortgages, 90 percent of them actually got the mortgages, so the amount of loss is much smaller. And you say, no, no, only 10 percent of them got it, so the loss is much higher. There's a dispute about the loss. Thank you, Your Honor. That's a completely different argument. No, no, but it's totally related to this question. It is absolutely related. And that — there is plenty of discussion about it, and I'm happy to explain it. So how do we know — so the question is, how do we know the district court thought that the loss, expected loss, was going to be so big that it was justified in freezing $3 million of assets, say? That's what we need to find in the record. Well, first, it was the receiver's report put the success rate — and even success has to be in quotation marks, and I'll explain that in a second — put the success rate at 20 percent. How do we know the district court thought that was correct? It was in the hearing. In the hearing itself, the 20 percent is at EOR 85. And so did — at the excerpts of record 85, the receiver informed the court that they believe that the success rate is closer to 20 percent. Right. How do we know the court believed that? Where is the court finding that says, I'm freezing the right amount of assets? Or where is your case that says that's not necessary? One or the other. In this case, it's not necessary. But let me — How do we know that, though, as a matter of law? No, it's not. It's actually a matter of admitted fact. And — It's not admitted, though, because — No, not that part, if I may explain, Your Honor. The $11 million in consumer harm is basically the aggregation of advanced fees that the consumer had to pay in violation of the Mars rule. Right? So the — You get to $11 million just from the advanced fees. Just from the advanced fees. And — But there wasn't some, like, if they had gotten the mortgage and gotten a reduction, it would be credited against it or something? Right. That's their burden. Right. Right? Okay. So the $11 million are in advanced fees. The principal defendant, Jonathan Hanley, in his declaration to the court, admitted that they collected advanced fees. So that part is admitted. Then it becomes, to the extent that they have to show that their liability in terms of consumer redress is less than that, it's their burden to show that, in fact, particular consumers, even though they paid the advanced fees illegally, would have paid those fees after they've gotten their modification, because they would have accepted that modification. Right. Right. But they're making that argument, I think, and they were making it in the district court, too, weren't they? No. Their entire argument in the district court is that their own review of their own database showed success rate of 94%. But isn't that all the same point? That, like, if success rate was 94%, then that would mean they would be able to show that people would have paid these fees anyway? Correct. Right. And because their evidence for that was the thumb drive that they gave to the court a couple days before the hearing. Right. I mean, we might think that, okay, that evidence was no good, but we're not the fact finder. So did the district court say, like, I don't believe this thumb drive or this is silly or anything like that? Yes. What the district court did say is, your numbers are not consistent with the numbers I'm getting from the receiver. And so I am happy to postpone the hearing for a couple of weeks so you can come back with better analysis, because I'm not going to go through the thumb drive myself to decide what the number is. And they turned that down. But at page 100, the district court said, yeah, that's the problem we all have, is that we've got a bunch of data that nobody's really got their arms around it. So I'm just at a loss as to ‑‑ It's their burden, Your Honor. He gave them the chance. He gave them the chance to continue the hearing so they can come up with better evidence, and they did not take that chance. Could you point me in the record where the district court made the finding about the asset freeze? Where is that in the record? I'm not sure what you mean by the finding of the asset freeze. When the district court said, I'm going to freeze these assets. Where is that in the record? It said, I'm going to enter the preliminary injunction, which includes the asset freeze. It did not make a separate ‑‑ No, no separate discussion. No, the preliminary injunction included the asset freeze and said, well, if you're not going to ‑‑ That's because it was drafted. The FTC had submitted a proposed preliminary injunction. It was drafted by the FTC. After the fact, they asked for a proposed ‑‑ Right. Yes. But in the motions, in the motion for the TRO and for the PI, the FTC had asked for the asset freeze as well. And so it was ‑‑ because it was their burden to reduce that amount to the extent that they're saying, again, I have to stress, their argument is not that ‑‑ their argument that they presented today was about something called ‑‑ what they call unrelated assets, which are not unrelated because the individuals are defendants. The other piece that they are challenging, the success rate, is the one that it was their burden to show the ‑‑ to convince the district court. They did not. The district court offered to continue the ‑‑ But you didn't ‑‑ No, they didn't convince the district court, though, because there's no discussion of it. You didn't put it in the preliminary injunction. The draft ‑‑ the preliminary injunction you drafted didn't discuss their burden to show the amount of loss or the amount of loss that was shown. That's not included in the preliminary injunction. But they are the one that waived it, Your Honor. But you're the one that drafted the preliminary injunction order, correct? The preliminary injunction order is the standard commission order that has the ‑‑ to the extent it has findings of fact, they're very general. It basically says there was ‑‑ there is consumer harm. That consumer harm, to satisfy the consumer harm, the ‑‑ Where is the part that talks about the freezing of assets in the preliminary injunction? It's on page 11 of the ‑‑ of the order itself, Your Honor. But that one basically has no findings of fact. That just ‑‑ that's the order of actually freezing the assets. Right. But our case authority does say that preliminary injunction should include findings of fact. It does have findings of fact in the first ‑‑ in the first ‑‑ on pages 2 and 3. How do we even know from looking at this how many assets were frozen? It's not even ‑‑ there aren't even descriptions of the amount in the assets here. Because it was not entirely clear yet what they are. I mean, we have to freeze them in order to go see what they are to make an accounting for them. And again ‑‑ How do we know, again, then, that we're not in the situation where they actually have $100 million of assets? If they did have $100 million, the judge repeatedly said, I'm happy to modify the order according to what evidence you bring. They never went back to say, by the way, you froze $100 million when all the commission is alleging is $11 million. They never went back to do that. There's no limit in here on how many assets can be frozen. There's no finding as to the amount of loss that the assets are supposed to cover. Your Honor, in the nature of the preliminary injunction, it's not clear. I've been a district court judge. I've seen preliminary injunctions from the FTC. And amounts are attainable, even if they're just estimates. Sometimes they are. Absolutely. The estimates, again, part of it was included in the receiver's report, as far as the corporate estimates, the corporate assets were concerned. And I'm running out of time. You've exceeded your time. Are there any other questions? All right. Thank you, counsel. Thank you. I'll just touch on a couple of the issues that have come up. One, we totally acknowledge these assets relate to the or belong to the named defendants. We simply say that you can't simply just take all of their assets at this preliminary stage, even when they're not disgorgeable, and you acknowledge that. With respect to the arguments. And what law are you relying on to say they're not disgorgeable? State law, right? De Beers. No. Oh, no. I'm relying on the fact that they're not disgorgeable because the way these work, when the receiver claims all of the assets that are derived or are subject to disgorgement, and then the FTC is taking the assets that are not subject to disgorgement because they predate any of the alleged conduct. Well, the FTC clearly thinks that the individual's assets are subject to disgorgement. I mean, there's some disconnect here. I'm wondering what you're relying on to say they're wrong about that. I am relying on De Beers. I really am. I'm relying on the distinction, the fact that disgorgement is an equitable remedy, and this Court has addressed that many times, including some recent case law. It is equitable and it is fairly broad, but it does still require that you're disgorging something that you weren't supposed to have. She's been allowed to have her grandma's ring, to say it colloquially, because it's not ill-gotten. If I win the lottery, I didn't get that through allegedly defrauding people. And then various reasons. So even if she defrauded people of $100 million and then spent that $100 million and is left only with her grandma's ring, you're saying she can never have to give the grandma's ring to pay back the victims? No. I'm saying once there's a judgment, then you can execute on her assets just like you can with a normal judgment. It's gone by then. That's the point of the preliminary. Well, then you go through Rule 64, and you just make all of the findings under Rule 64. I think that's going to be a conflict. Now you're relying on State law again, though. Yeah. Not only because Federal Rule 64 expressly incorporates State law. But if we're in 65, if it's under Rule 65, do you take issue with the fact that all of the assets except for the ones that you say are personal would be subject to freeze regardless of the amount that's owed? Yes. In our brief, for example, we said at most it would be about $600,000. Our client, and this was like 17 hours a day of making him go through actual client files because the FTC hasn't done it, the receiver hasn't done it, and came up with 94 percent on the ones he was able to get through. You know, we had like a week to do this. And we believe at most $600,000 is subject to it. It's in our brief. Could you just briefly address the issue of irreparable harm and whether a finding of irreparable harm was required in this case? Yes. Because this is a Proviso 2 case, irreparable harm does have to be found. There is a statement in the order that has just no fact-finding, but just a statement of irreparable harm, but that's informed by the fact that on page 67 of the excerpt of records, the Court says he is presuming irreparable harm. Thank you very much. All right. Thank you. Okay. Irreparable harm issue? No, no, no, no, no, no, no. Okay. Thank you. We understand your argument. All right. Thank you to all counsel. The case is submitted for discussion by the Court. That completes our calendar for the day and the week. We are adjourned.
judges: Rawlinson, Watford, Friedland